UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NARRAGANSETT INDIAN TRIBE,
ACTING BY AND THROUGH THE
NARRAGANSETT INDIAN TRIBAL
HISTORIC PRESERVATION OFFICE

      v.                                                C.A. No.

BRANDYE L. HENDRICKSON in her
official capacity as Deputy Administrator of the
FEDERAL HIGHWAY ADMINISTRATION

## COMPLAINT

NOW COMES Plaintiff Narragansett Indian Tribe, acting by and through the Narragansett Indian Tribal Historic Preservation Office (hereafter the "Tribe" or "NIT") and complains of the Defendant as follows:

## NATURE OF THE ACTION

1. The Tribe brings this action to challenge the termination of a programmatic agreement ("PA") entered into pursuant to the regulations of the National Historic Preservation Act ("NHPA"). The termination of the PA occurred after substantial construction had taken place on the project for which the PA was meant to address and resolve the adverse effects of the project on historic properties to the signatories' satisfaction. The termination of the PA after substantial work had been performed on the project, and the subsequent final decision of the Federal Highway Association ("FHWA") was arbitrary and capricious.

## JURISDICTION

2. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1362 (Jurisdiction Over Indian Tribes) and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment and Injunctive Relief).

1

3. The Administrative Procedure Act ("APA") provides a waiver of sovereign immunity as well as a cause of action, 5 U.S.C. § 702.

## STANDING

4. The APA affords a right of review to anyone who is "adversely affected or aggrieved by agency action." 5 U.S.C § 702. Defendant's termination of the PA has adversely affected the Tribe's rights under the PA as well as the Tribe's rights to be consulted on undertakings pursuant to the NHPA, such that historical sites have been disturbed with no adequate remedy provided as per the PA and as required pursuant to the NHPA.

## VENUE

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to the claim occurred in the District of Rhode Island.

## PARTIES

6. Plaintiff, The Narragansett Indian Tribe, by and through NITHPO, is the duly created political entity responsible for historic preservation pursuant to the National Historic Preservation Act, § 101(d)(2) Agreement between the National Park Service, U.S. Department of Interior and the Narragansett Indian Tribe, dated August 7, 1996.

7. Defendant Brandye L. Hendrickson in her official capacity as Deputy Administrator of the Federal Highway Administration ("FHWA") represents an executive agency of the United States.

## NATIONAL HISTORIC PRESERVATION ACT

8. Congress enacted the NHPA, 54 U.S.C. §§300101 et seq., to preserve America's historic and cultural heritage. Congress declared that "the historical and cultural foundations of the Nation should be preserved as a living part of our community life and development in order to give a sense of orientation to the American people" and that "the preservation of [our] irreplaceable heritage is

in the public interest so that its vital legacy of cultural, educational, esthetic, inspirational, economic, and energy benefits will be maintained and enriched for future generations of Americans." Section 1 of the National Historic Preservation Act, Pub. L. No. 89-665, as amended by Pub. L. No. 96-515.

9. Section 106 of the NHPA requires all federal agencies to "take into account" the impact of federal undertakings on historic properties.

10. Federal agencies are required to consult with Indian Tribes, such as the NIT, on a government to government basis. Moreover, federal regulations provide that "the Federal Government has a unique legal relationship with Indian tribes set forth in the Constitution of the United States, treaties, statutes, and court decisions. Consultation with Indian tribes should be conducted in a sensitive manner respectful of tribal sovereignty." 36 C.F.R. § 800.2(c).

11. When an undertaking will adversely affect one or more historic properties, the federal agency must engage in consultation to "develop and evaluate alternatives or modifications to the undertaking that could avoid, minimize or mitigate [those] adverse effects." 36 C.F.R. § 800.6.

## GENERAL ALLEGATIONS

12. FHWA has provided substantial funding for the replacement of the I-95 Providence Viaduct Bridge No. 578 project in Providence, Rhode Island (the Viaduct Project), including funding under Title 23 of the United States Code.

13. As a recipient of federal funds, including Title 23 funds, the Viaduct Project qualifies as an "undertaking" pursuant to the NHPA.

14. Section 106 of the NHPA requires federal agencies to take into account the effect of any federal undertaking on any historic property protected by the NHPA before licensing or expending funds for such undertaking. 54 U.S.C. § 306108.

4823-1588-2872, v. 6

15. FHWA determined that implementation of the Viaduct Project would result in adverse effects on the Providence Covelands Archaeological District (RI 935).

16. The Tribe attaches religious and cultural significance to the Providence Covelands Archaeological District (RI 935).

17. Instead of undergoing a Phase III archaeological data recovery program to mitigate the effects of the Viaduct Project—because such a program would not have been feasible due to environmental, logistical, and cost factors—FHWA developed the PA amongst itself, the Tribe, the Rhode Island State Historic Preservation Office ("RISHPO"), and the Rhode Island Department of Transportation ("RIDOT").

18. Upon information and belief, the actual costs of conducting a Phase III archaeological data recovery program would have exceeded thirty million ($30,000,000) dollars.

19. Pursuant to 36 C.F.R. Part 800, governing Section 106 of the National Historic Preservation Act of 1966, as amended, Plaintiff, Defendant, RIDOT, and RISHPO executed the PA, effective October 3, 2011, to govern the implementation of the Viaduct Project and to take into account the foreseen and unforeseen future effects of the Viaduct Project on historic properties.

20. Pursuant to the PA, FHWA, in coordination with RIDOT, agreed, *inter alia*, to certain stipulations requiring the acquisition and transfer of land to Plaintiff, which stipulations were amended on January 17, 2013 in Amendment No. 1 to the PA.

21. Stipulation 3 of the amended PA requires "FHWA in coordination with RIDOT" to acquire and transfer ownership of certain parcels of land to the Tribe, including: (a) the Salt Pond Archaeological Preserve (RI 110), Town of Narragansett Tax Assessor's Plat W, Lot 81, Lot 82/Subdivision Lots 27-79 and Lot 82/Subdivision Lots A (portion), B, C, E (portion), F, G, H, I, J and K; (b) the so-called "Providence Boys Club - Camp Davis" property (a 105+/- acre parcel),

4

Town of Charlestown Tax Assessor's Plat 19, Lot 75; and (c) the so called "Chief Sachem Night Hawk" property, located at 4553 South County Trail (Tax Assessor's Plat 22, Lot 9-1) in the Town of Charlestown, Rhode Island (all three properties collectively referred to as the "Mitigation Properties").

22. The PA provided that the Salt Pond Archaeological Preserve was to be transferred to the Tribe as a joint owner with the State of Rhode Island.

23. Ownership of the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties was to be transferred solely to the Tribe with "[a]ppropiate covenants that preserve the property and its cultural resources in perpetuity[.]"

24. To help facilitate the acquisition of the Salt Pond Archaeological Preserve, the Tribe authorized the release of $450,000 to FHWA which was being held pursuant to an escrow agreement with U.S. Fish and Wildlife and the Tribe.

25. An additional $450,000 was re-allocated by FHWA and RIDOT from the Tribe's Crandall Farm Transportation Enhancement Project towards the costs of acquisition of the Mitigation Properties.

26. The Mitigation Properties have inherently historic, cultural, and religious significance to the Tribe.

27. The Chief Sachem Night Hawk property was actually acquired by RIDOT from a Tribal member with the express understanding that the property would then be transferred back to the Tribe as part of the PA.

28. The PA never required the Tribe to waive its sovereign immunity with respect to the transfer of the Mitigation Properties.

29. Construction of the Viaduct Project began in June 2013.

4823-1588-2872, v. 6

30. Despite ongoing and continuous construction of the Viaduct Project, the RIDOT unilaterally announced that it would not transfer the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties to the Tribe unless the Tribe specifically waived its sovereign immunity with respect to those two properties and entered into a covenant to subject the properties to the civil and criminal laws and jurisdiction of the State of Rhode Island.

31. On September 1, 2016 FHWA advised RIDOT that the failure to satisfy the "section 106 commitment to transfer these properties to the Tribe . . . stems from RIDOT's insistence that the Tribe waive its sovereign immunity as a prerequisite to transferring the property, a requirement not included in the programmatic agreement[.]"

32. The southbound lane of the Viaduct Project was completed and opened to traffic in the Fall of 2016.

33. The construction of the southbound lane of the Viaduct Project through the Providence Coveland District has resulted in damage to and despoliation of sites of historical, cultural, and religious significance to the Tribe without any appropriate archaeological investigation being conducted.

34. The despoliation of historically, culturally, and religiously significant sites is in violation of the American Indian Religious Freedom Act, 42 U.S.C. § 1996.

35. FHWA terminated the PA on January 19, 2017, after RIDOT unilaterally demanded that the Tribe waive its sovereign immunity in the deeds to the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties.

36. On May 3, 2017, the Advisory Council on Historic Preservation ("ACHP") issued comments to the FHWA regarding the termination of the PA.

37. FHWA was required to take into account the ACHP's comments in making a final decision on how to proceed with the undertaking.

38. The ACHP's comments recommended that: (a) the Viaduct Project should not be delayed; (b) the Salt Pond Archaeological Preserve should be preserved as agreed to in the PA; and (c) the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties should be transferred to the Tribe as sole owners, without covenants, without waiver of sovereign immunity, but with the state retaining jurisdiction.

39. On June 28, 2018, FHWA, "tak[ing] into consideration the [ACHP's] comments dated May 3, 2017" determined that it would "reinitiate Section 106 consultation for the project and draft a new PA committing to the below mitigation items to address the known and potential adverse effects to historic properties on the I-95 Viaduct Project in Rhode Island."

40. The new mitigation items identified by FHWA were as follows: (a) transfer of the Salt Pond Archaeological Preserve as contemplated by the PA; and (b) in lieu of the land transfers of the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties, implementation of an "academic-level historic context document about the Tribe; Section 106 training provided to the Tribe; a video documentary about the Tribe; and a teaching curriculum for Rhode Island public schools about the Tribe."

41. The June 28, 2018 determination by FHWA constitutes final agency action from FHWA regarding the termination of the PA.

42. The final action of FHWA has resulted in a complete failure to address and mitigate the adverse effects of the Viaduct Project, including the destruction of the site that has resulted from completion of the southbound lane of the Viaduct Project.

4823-1588-2872, v. 6

## COUNT I

### (Violation of the Administrative Procedure Act)

43. The Tribe repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

44. The Tribe has been aggrieved by agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq.

45. The PA entered into amongst the various parties was meant to address and mitigate the adverse effects of the Viaduct Project.

46. The termination of the PA and the decision of the FHWA to reinitiate Section 106 consultation, while simultaneously dictating new mitigation items, fails to recognize that the entire southbound lane of the Viaduct Project was constructed without its effects being mitigated, and thus is in violation of the NHPA.

47. Similarly expenditure of Title 23 funds on the southbound lanes without complying with the NHPA and NEPA constitutes a violation of Title 23.

48. Furthermore, the decision of FHWA fails to respond to the ACHP's comments, does not contain a rationale for the decision, and does not contain evidence of consideration of the ACHP's comments.

49. FHWA's termination of the PA and decision to reinitiate Section 106 consultation, while simultaneously dictating new proposed mitigation items—items that the Tribe was never consulted about—is arbitrary and capricious.

50. The final decision of the FHWA is in violation of the NHPA and its implementing regulations in several respects, including:

4823-1588-2872, v. 6

    a. Permitting RIDOT to commence and complete construction of the entire southbound lane of the Viaduct Project without any mitigating measures for the adverse effects on the Providence Covelands Archaeological District (RI 935), nor completion of NHPA and NEPA;

    b. Failing to provide a rationale for the final decision or provide any evidence of consideration of the ACHP's comments before issuing its final decision;

    c. Failing to facilitate the transfer of the mitigation properties contained in the PA before permitting RIDOT to commence and complete construction of the entire southbound portion of the Viaduct Project; and

    d. Attempting to impose new mitigation terms without consulting the Tribe.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant and provide the following relief:

1. Declare that the Viaduct Project violates the NHPA and APA;

2. Declare that Defendant violated the NHPA by failing to address the adverse effects of the Viaduct Project on historic property, including property of cultural and religious significance to the Tribe;

3. Enjoin the Defendant from taking any action in furtherance of implementing the Viaduct Project until Defendant comes into compliance with the NHPA;

4. Enjoin the Defendant from taking any action to transfer or facilitate the transfer of the Mitigation Properties;

5. Award Plaintiff compensatory damages of Thirty Million Dollars ($30,000,000) for the destruction of and damage of sites of cultural and religious significance to the Tribe within the Providence Covelands Archaeological District (RI 935);

6. Award Plaintiff their attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act and the NHPA;

7. Award such other and further relief as the Court may deem just and proper.

        Respectfully submitted,

        NARRAGANSETT INDIAN TRIBE BY AND
        THROUGH THE NARRAGANSETT INDIAN
        TRIBAL HISTORIC PRESERVATION OFFICE

        By its Attorneys,

        */s/ William P. Devereaux*
        William P. Devereaux (#2241)
        Patrick J. McBurney (#9097)
        PANNONE LOPES DEVEREAUX & O'GARA LLC
        Northwoods Office Park, Suite 215 N
        1301 Atwood Avenue
        Johnston, RI  02919
        (401) 824-5100
        (401) 824-5123 (fax)
        wdevereaux@pldolaw.com
        pmcburney@pldolaw.com

Dated: March 29, 2019

4823-1588-2872, v. 6