**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| NARRAGANSETT INDIAN TRIBE, | : | | |
| ACTING BY AND THROUGH THE | : | | |
| NARRAGANSETT INDIAN TRIBAL | : | Civil Action No.: | 20-576 (RC) |
| HISTORIC PRESERVATION OFFICE, | : | | |
| | : | Re Document Nos.: | 47, 53, 55, 58, 59, |
| Plaintiff, | : | | 63, 70 |
| | : | | |
| v. | : | | |
| | : | | |
| STEPHANIE POLLACK, | : | | |
| Acting Administrator, Federal Highway | : | | |
| Administration, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

GRANTING STATE DEFENDANTS' MOTION TO DISMISS (ECF NO. 47);
GRANTING IN PART AND DENYING IN PART AGENCY'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT (ECF NO. 63);
DENYING NARRAGANSETT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 53);
DENYING NARRAGANSETT'S MOTION TO COMPEL ADMINISTRATIVE RECORD (ECF NO. 55);
GRANTING THE AGENCY'S MOTION FOR EXTENSION OF TIME (ECF NO. 58);
DENYING NARRAGANSETT'S MOTION FOR SANCTIONS (ECF NO. 59);
DENYING NARRAGANSETT'S MOTION TO AMEND/CORRECT (ECF NO. 70)

## I. INTRODUCTION

The Narragansett Indian Tribe, acting by and through the Narragansett Indian Tribal

Historic Preservation Office ("Narragansett" or "Tribe"), brings this action against Stephanie

Pollack, who is Acting Administrator of the Federal Highway Administration ("Agency"), and

several Rhode Island defendants—the state itself, its Department of Transportation, and Claire

Richards, Executive Counsel at the Rhode Island Office of the Governor ("State Defendants")—

challenging actions taken regarding a highway project in Rhode Island.  The National Historic

Preservation Act ("NHPA"), codified at 54 U.S.C. §§ 300101 *et seq.*, requires that federal

agencies "take into account" the preservation of historic sites when implementing federal projects. Narragansett argues that the defendants acted unlawfully when they terminated a programmatic agreement that was formed pursuant to NHPA and federal regulations which was meant to fulfill the NHPA statutory requirement. The State Defendants move to dismiss the Amended Complaint as it pertains to them on several grounds, including personal jurisdiction. The Agency moves to dismiss for lack of standing and for summary judgment as to the Agency. The Court holds that Narragansett has not demonstrated personal jurisdiction over the State Defendants nor standing as to the claim against the Agency and therefore grants both motions to dismiss.

## II.  FACTUAL BACKGROUND

### A.  Statutory and Regulatory Framework[1]

The NHPA requires that any federal agency "having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking . . . prior to the approval of the expenditure of any Federal funds on the undertaking . . . shall take into account the effect of the undertaking on any historic property."  54 U.S.C. § 306108.  This requirement is often referred to as the "Section 106" process.  The Advisory Council on Historic Preservation ("ACHP") is the agency responsible for issuing regulations that implement the Section 106 process.  36 C.F.R. § 800.2(b).  Regulations codified at 36 C.F.R. § 800 *et seq.* lay out the steps an agency must take to comply with NHPA's requirement to "take into account the effect of the undertaking on any historic property."  "The section 106 process seeks to accommodate historic preservation concerns with the needs of Federal undertakings through consultation among the agency official

---

[1] This section is drawn from the Court's earlier opinion in this case.  *See Narragansett Indian Tribe by & Through Narragansett Indian Tribal Historic Pres. Off. v. Nason*, No. CV 20-576 (RC), 2020 WL 4201633, at *1–2 (D.D.C. July 22, 2020).

and other parties with an interest in the effects of the undertaking on historic properties, commencing at the early stages of project planning." 36 C.F.R. § 800.1(a). Subpart B of this chapter of the Code of Federal Regulations lays out in detail the normal Section 106 process. *See* 36 C.F.R. §§ 800.3–800.13. Subpart C discusses program alternatives. *See id.* §§ 800.14–800.16.

One type of program alternative to the Section 106 process is the development of programmatic agreements. *See* 36 C.F.R. § 800.14(b). Programmatic agreements "govern the implementation of a particular program or the resolution of adverse effects from certain complex project situations or multiple undertakings." *Id.* Before implementing a programmatic agreement, the federal agency must consult with the appropriate stakeholders, including state historical preservation offices and Indian tribes. *Id.* § 800.14(b)(2)(i). Programmatic agreements take effect when executed by the stakeholders. *Id.* § 800.14(b)(2)(iii). "Compliance with the procedures established by an approved programmatic agreement satisfies the agency's section 106 responsibilities for all individual undertakings . . . covered by the agreement." *Id.* The regulations state that if the ACHP "determines that the terms of a programmatic agreement are not being carried out, or if such an agreement is terminated, the agency official shall comply with subpart B of this part" with respect to the undertaking covered by the agreement. *Id.* § 800.14(b)(2)(v). An approved programmatic agreement satisfies an agency's Section 106 responsibilities "until it expires or is terminated by the agency . . . or the [ACHP]." *Id.* § 800.14(b)(2)(iii).

Because federal regulations state that compliance with programmatic agreements fulfills an agency's Section 106 responsibilities, courts analyze programmatic agreements to determine whether agency action is compliant with their terms. *See Dine Citizens Against Ruining Our*

*Env't v. Bernhardt*, 923 F.3d 831, 847 (10th Cir. 2019) (stating that the issue to resolve is whether agency violated requirements of a programmatic agreement); *Colo. River Indian Tribes v. Dep't of Interior*, No. ED CV-1402504 JAK (SPx), 2015 WL 12661945, at *13 (C.D. Cal. June 11, 2015) (explaining that obligations under a programmatic agreement serve as a substitute to compliance with Section 106). Holding an agency to the terms of a programmatic agreement follows from the regulatory language; if "[c]ompliance with the procedures established by an approved programmatic agreement" can satisfy an agency's Section 106 obligations, 36 C.F.R. § 800.14(b)(2)(iii), noncompliance with the terms would not satisfy those obligations.

More generally, Section 106 does not dictate substantive results. Instead, Section 106 is a procedural statute requiring a federal agency to take certain steps prior to beginning a project. *See Nat'l Min. Ass'n v. Fowler*, 324 F.3d 752, 755 (D.C. Cir. 2003) ("An essentially procedural statute, section 106 imposes no substantive standards on agencies, but it does require them to solicit the [ACHP's] comments and to take into account the effect of [their] undertakings." (internal quotations and citations omitted)).

## B. History Up to Previous Opinion[2]

As pled in the initial Complaint, FHWA has provided substantial funding for the replacement of the I-95 Providence Viaduct Bridge. Compl. ¶ 12, ECF No. 1.[3] In the initial planning phases of the project, FHWA determined that the bridge replacement "would result in adverse effects on the Providence Covelands Archaeological District." *Id.* ¶ 15. To address the adverse effects, FHWA developed a programmatic agreement in consultation with Narragansett,

---

[2] This section is largely drawn from the Court's earlier opinion in this case. *See Narragansett*, 2020 WL 4201633, at *2–3.

[3] Narragansett originally filed this case with the U.S. District Court for the District of Rhode Island and subsequently moved to transfer to this Court. *See* Mem. & Order at 2–3, ECF No. 23 (granting Narragansett's motion for reconsideration and, on reconsideration, granting motion to transfer to the District of Columbia).

the Rhode Island State Historic Preservation Office, and the Rhode Island Department of Transportation ("RIDOT").  *Id.* ¶ 17.

The programmatic agreement required "FHWA in coordination with RIDOT" to acquire and transfer ownership of three parcels of land to the Tribe.  *Id.* ¶ 21.  The parcels, as identified in the Complaint, are the Salt Pond Archaeological Preserve, the so-called "Providence Boys Club – Camp Davis" property, and the so-called "Chief Sachem Night Hawk" property.  *Id.*  The three parcels of land "have inherently historic, cultural, and religious significance to the Tribe." *Id.* ¶ 26.  The transfer of ownership was meant to mitigate the negative effects of the highway project.  *See id.* ¶¶ 15–19.

Construction began on the highway project in June 2013, but ownership of the properties had not yet been transferred to the Tribe.  *Id.* ¶ 29.  At this point, the parties to the programmatic agreement reached an impasse.  RIDOT refused to transfer title of the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties to the Tribe unless the Tribe specifically waived sovereign immunity with respect to those properties.  *Id.* ¶ 30.  But the programmatic agreement contained no provision requiring the waiver of sovereign immunity.  *Id.* ¶ 31.  The Tribe thus refused to agree to the condition and RIDOT refused to transfer the properties absent a waiver.  Confronted with this impasse, FHWA sought to terminate the programmatic agreement even though construction on the southbound lane had already been completed and opened to traffic.  *Id.* ¶¶ 32, 35.

The ACHP issued comments on the proposed termination of the programmatic agreement on May 3, 2017.  *Id.* ¶ 36.  The ACHP stated that the project should not be delayed, that the Salt Pond Archaeological Preserve should be preserved under the terms of the original programmatic agreement, and that the other two parcels should be transferred to the Tribe without a waiver of

sovereign immunity.  *Id.* ¶ 38.  After receiving ACHP's comments and taking them into

consideration, FHWA determined it would reinitiate the normal Section 106 consultation process

and draft a new programmatic agreement.  *Id.* ¶ 39.  FHWA outlined new mitigation items to

address the adverse effects of the project, including that in lieu of the land transfers of the

Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties, the

programmatic agreement would implement an academic-level historic context document about

the Tribe, Section 106 training for the Tribe, a video documentary about the Tribe, and a

teaching curriculum for Rhode Island public schools about the Tribe.  *Id.* ¶ 40.  Narragansett

claims that terminating the original programmatic agreement and "dictating new proposed

mitigation items—items that the Tribe was never consulted about—is arbitrary and capricious."

*Id.* ¶ 49.

        This is not the first lawsuit the Tribe has filed regarding the Viaduct Bridge project and

the impasse reached between the parties.  In 2017 and 2018, the District of Rhode Island and the

First Circuit Court of Appeals ruled on a lawsuit brought by the Tribe alleging breach-of-contract

claims stemming from RIDOT's refusal to transfer the properties.  *Narragansett Indian Tribe, by*

*and Through the Narragansett Indian Tribal Historic Pres. Off. v. R.I. Dep't of Transp.*, No. 17-

cv-125, 2017 WL 4011149, at *2 (D.R.I. Sept. 11, 2017), *aff'd*, 903 F.3d 26 (1st Cir. 2018).  The

district court dismissed the claims against the federal defendants because the Complaint was

"devoid of any assertion that Federal Defendants' final agency action caused Plaintiff harm."  *Id.*

at *3.  The court reasoned that the Tribe's claims were generally premised on RIDOT's refusal to

transfer the land, not any action taken by FHWA, and therefore the court lacked subject-matter

jurisdiction with respect to the claims against the federal agency.  *Id.*  On appeal, the Tribe

argued that the NHPA creates a private cause of action that encompassed the claims against

FHWA.  903 F.3d at 29.  The First Circuit, assuming without deciding that the NHPA does create a private cause of action, held that the Tribe failed to allege a violation of the NHPA by the federal defendants.  *Id.* at 30.  Instead, the court saw the complaint as an attempt to compel "the federal defendants to participate as parties in a suit . . . arising out of RIDOT's alleged breach of contract."  *Id.*  The court affirmed the dismissal and noted that "[n]othing in the regulations requires a federal agency to enter into [a programmatic agreement].  And nothing in the regulations prevents the agency from terminating such an agreement."  *Id.*  The court passed on the question of whether the APA's waiver of sovereign immunity would allow a court to review final agency action in this case.  *See id.* at 29.

### C.  Subsequent Procedural History

The Court denied the Agency's earlier motion to dismiss in this case, holding that Narragansett "has alleged sufficient facts to survive a motion to dismiss" premised on the Administrative Procedure Act's prohibition on arbitrary and capricious action, and stating that the Court would "await motions for summary judgment with citations to the administrative record."  *Narragansett Indian Tribe by & Through Narragansett Indian Tribal Historic Pres. Off. v. Nason*, No. CV 20-576 (RC), 2020 WL 4201633, at *4 (D.D.C. July 22, 2020).  After that opinion was issued, Narragansett filed an Amended Complaint adding the State Defendants and a claim for a Fourteenth Amendment violation.  *See* Am. Compl., ECF No. 43.

The State Defendants moved to dismiss the Amended Complaint on many grounds: lack of personal jurisdiction, improper venue, improper process and service of process, lack of subject matter jurisdiction, and failure to state a claim.  State Defs.' Mem. L. Supp. Mot. Dismiss ("R.I. Mem.") at 1–2, ECF No. 47-1; Pl.'s Mem. P. & A. in Opp'n State Defs.' Mot. Dismiss ("R.I. Opp'n"), ECF No. 49; State Defs.' Reply Mem. Supp. Mot. Dismiss ("R.I. Reply"), ECF No. 50.

Narragansett moved for summary judgment that the Agency's actions were arbitrary and capricious and not in accordance with law.[4]  Mem. P. & A. Supp. Pl.'s Mot. Summ. J. ("Fed. Mem."), ECF No. 53-1.  The Agency opposed, moved to dismiss for lack of standing, and cross-moved for summary judgment.  Mem. P. & A. Supp. Fed. Def.'s Opp'n Pl.'s Mot. Summ. J, Mot. Dismiss for Lack of Subject Matter Jurisdiction, & Cross-Mot. Summ. J. on Count I ("Fed. Opp'n & Mem."), ECF Nos. 63 & 64; Pl.'s Resp. Def.'s Opp'n Pl.'s Mot. Summ. J, & Pl.'s Opp'n Def.'s Mot. Dismiss & Cross Mot. Summ. J. & Pl.'s Request to Correct/Complete or Suppl. R. ("Fed. Reply & Opp'n"), ECF Nos. 66, 69 & 70; Fed. Def.'s Reply Supp. Mot. Dismiss for Lack of Subject-Matter Jurisdiction & Cross-Mot. Summ. J. on Count I ("Fed. Reply"), ECF No. 68.

After Narragansett filed its motion for summary judgment, but before the Agency's response, Narragansett filed a motion to compel completion and amendment of the administrative record.  Mem. Supp. Pl.'s Mot. Compel Completion & Amendment of Admin. R., ECF No. 55-1.  After moving for, and receiving, an extension on its response deadline, the Agency moved for a second extension of time, which therein noted Narragansett's opposition.

---

[4] The State Defendants filed a short opposition to Narragansett's motion for summary judgment stating that they "construe Plaintiff's Motion for Summary Judgment as only moving for summary judgment regarding the claims against the *Federal* Defendant."  State Defs.' Resp. Regarding Pl.'s Mot. Summ. J. &/or State Defs.' Mot. Stay Briefing as to State Defs.' at 2, ECF No. 54.  According to the State Defendants, their counsel had reached out to Narragansett's counsel to clarify that the motion was against only the Agency, but Narragansett's counsel provided no clarification.  *Id.* at 2–3.  Narragansett did not file a reply in response to the State Defendants' opposition.  The motion does bear some indication that it applies only to the Agency.  *See, e.g.*, Fed. Mem. at ii (major headings in table of contents referring only to arbitrary and capricious action taken by the Agency).  Given that Narragansett did not dispute the State Defendants' assertion that this motion does not apply to them, either with a reply brief or informally to State Defendants' counsel, the Court construes the motion to move for summary judgment against only the Agency.  Even if Narragansett's motion for summary judgment also applied to the State Defendants, it would fail against them because they are dismissed on personal-jurisdiction grounds per the Court's ruling below.

Fed. Def.'s 2d Mot. Extension of Time to Respond to Pl.'s Mot. Suppl. Admin. R., ECF No. 58.

Rather than file an opposition, Narragansett filed a motion for sanctions.  Pl.'s Mem. Supp. Mot.

Sanctions, ECF No. 59-1.  The Agency filed an opposition to the motion for sanctions and later

filed its opposition to the motion to compel on the same day that it filed its opposition to

Narragansett's motion for summary judgment, motion to dismiss, and cross-motion for summary

judgment.  Fed. Def.'s Opp'n Pl.'s Mot. Sanctions, ECF No. 61; Fed. Def.'s Partial Opp'n Pl.'s

Mot. Suppl. Admin. R., ECF No. 62.  Narragansett's reply and opposition brief regarding the

motion to dismiss and motions for summary judgment also included a request to correct,

complete, or supplement the record, which the Agency opposed in its final reply brief.  *See* Fed.

Reply & Opp'n at 18–22; Fed. Reply at 11–14.

### III.  LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a court to dismiss an action

when the court lacks personal jurisdiction over the defendant.  The plaintiff bears the burden of

establishing that a court has personal jurisdiction over each defendant.  *Erwin-Simpson v.*

*AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021).  "Personal jurisdiction may be satisfied by

either specific or general jurisdiction."  *Brit UW, Ltd. v. Manhattan Beachwear, LLC*, 235 F.

Supp. 3d 48, 54 (D.D.C. 2017) (citing *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d 86,

90 (D.D.C. 2008)).  While factual discrepancies in the record must be resolved in favor of the

plaintiff, *see Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017), a court is not required

to accept as true a plaintiff's "conclusory statements" or "bare allegations" regarding the

defendants' actions when conducting the personal jurisdiction analysis, *GTE New Media Servs.*

*Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000).  The court may "receive and

weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."

*United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (citation omitted).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action for lack of subject matter jurisdiction.  Constitutional standing is a jurisdictional issue because "the defect of standing is a defect in subject matter jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  "The court must address the issue of jurisdiction as a threshold matter, because absent jurisdiction the court lacks the authority to decide the case on any other grounds."  *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 91 (D.D.C. 2000).  "The party invoking federal jurisdiction bears the burden of establishing" standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  When assessing standing at the motion to dismiss stage, the Court will "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," but will "not assume the truth of legal conclusions, nor . . . accept inferences that are unsupported by the facts set out in the complaint." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal quotation marks and citations omitted).  "[B]ecause subject-matter jurisdiction relates to the Court's power to hear the claim, the Court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion."  *Am. Fed'n Gov't Emps. v. Sec'y Air Force*, 841 F. Supp. 2d 233, 235–36 (D.D.C. 2012).  "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## IV.  ANALYSIS

### A.  State Defendants' Motion to Dismiss

The State Defendants move for dismissal on several grounds: lack of personal jurisdiction, improper venue, improper process and service of process, lack of subject matter jurisdiction, and failure to state a claim.  R.I. Mem. at 2.  However, it is unnecessary to address any of them other than personal jurisdiction given the clear success of the State Defendants' motion on that ground.  *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021) ("[A] court 'does not abuse its discretion by turning directly to personal jurisdiction' when it 'has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999))).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Erwin-Simpson*, 985 F.3d at 888 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).  There are two types of personal jurisdiction: general and specific.  *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020).  General jurisdiction "sets a high bar," requiring a defendant to have "continuous and systematic" contacts with the forum state, but then permitting the forum to adjudicate any claims brought against the defendant.  *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008).  Specific jurisdiction requires that the suit "arise out of or relate to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017).  "This requires determining both that (i) jurisdiction is permissible under the forum state's long-arm statute, and (ii) the exercise of personal jurisdiction comports with the Due Process Clause."  *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020).

The State Defendants argue that they are not subject to either general or specific personal jurisdiction of this Court.  Regarding general personal jurisdiction, the State Defendants argue that none of them reside in the District of Columbia and there is no other reason to conclude that any of them are at "home" in the District.  *See* R.I. Mem. at 11 (citing affidavit of Defendant Claire Richards, which states that Richards resides in Rhode Island and has never resided in the District).  Regarding specific personal jurisdiction, the State Defendants argue that neither the District's long-arm statute nor the requirements of the Due Process Clause are met.  They argue that none of the State Defendants "have the necessary connections with the District of Columbia to implicate any of the grounds enumerated in the District of Columbia's long-arm statute" nor the "minimum contacts that would satisfy due process" because the allegations concern a construction project in Rhode Island, potential transfer of land in Rhode Island, and actions allegedly taken by Richards while she was employed by Rhode Island.  R.I. Mem. at 13–14.  They also cite authority that the District's long-arm statute does not apply to states, meaning all State Defendants except Richards in her personal capacity do not fall under the long-arm statute for that additional reason.  *Id.* at 13.

Narragansett gives almost no response to these arguments.  It makes no reference to whether it asserts general or specific personal jurisdiction, nor is there a reference to any provision of D.C.'s long-arm statute.  All Narragansett says about personal jurisdiction in its opposition to the State Defendants' motion is that the State Defendants' waiver of sovereign immunity gives this Court personal jurisdiction, R.I. Opp'n at 2, and that the "unique facts and circumstances give 'rise' to federal subject matter and personal jurisdiction," *id.* at 5.  But Narragansett does not cite any authority for the proposition that waiver of sovereign immunity would necessarily give this Court personal jurisdiction over the State Defendants.  The "unique

facts and circumstances" discussed by Narragansett also seem directed at subject matter jurisdiction.  Narragansett cites *Grable* in support of this proposition, but that case concerned only subject matter jurisdiction.  *Id.*; *see Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 311–12 (2005) (addressing whether "a federal cause of action" is always "a condition for exercising federal-question jurisdiction" under 42 U.S.C. § 1331).

Given the lack of citation to any facts or authority, the Court holds that Narragansett has not met its burden to demonstrate that this Court has personal jurisdiction over the State Defendants.[5]  The State Defendants argue that dismissal is the appropriate remedy as opposed to transferring back to Rhode Island.  *See* R.I. Mem. at 14–17; R.I. Reply at 3.  The Court agrees, largely because Narragansett has not even made such a request for transfer in response to the State Defendants' suggestion.  The State Defendants' motion to dismiss is therefore granted and the Amended Complaint is dismissed without prejudice as to the State Defendants.

### B.  Motion to Dismiss and Motions for Summary Judgment Relating to Agency

The Agency moves to dismiss for lack of subject matter jurisdiction because Narragansett lacks standing and moves for summary judgment on Count I of the Amended Complaint.  Fed. Opp'n & Mem. at 2.  Narragansett moves for summary judgment that the Agency acted arbitrarily and capriciously.  Fed. Mem. at 1.  For the reasons given below, the Court holds that Narragansett has not demonstrated that it has standing to assert Count I against the Agency and

---

[5] The Court hesitates to go beyond the parties' briefs, but notes that the State Defendants' contacts with the District seem to consist of negotiations with the federal government over the programmatic agreement and Section 106 process, and these negotiations may fall under the "government contacts" exception to the District's long-arm statute.  *See Alkanani v. Aegis Def. Servs.*, LLC, 976 F. Supp. 2d 13, 25 (D.D.C. 2014) (holding that contract "negotiated with the Department of Defense cannot serve as a 'business transaction' upon which specific jurisdiction may be predicated").  Of course, the Court would be more confident about the applicability of this exception if Narragansett had explained its asserted basis for personal jurisdiction by citing relevant authority and facts.

therefore grants the Agency's motion to dismiss and denies both motions for summary judgment as moot. "Due to the Court's finding that Plaintiff[] lack[s] constitutional standing, the Court does not reach the remainder of [the Federal] Defendant['s] arguments." *Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 107 (D.D.C. 2016), *aff'd sub nom. Tanner-Brown v. Zinke*, 709 F. App'x 17 (D.C. Cir. 2017).

"The 'irreducible constitutional minimum of standing contains three elements': injury in fact, causation, and redressability." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Injury in fact is the 'invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560) (alteration in original). "The 'causal connection between the injury and the conduct complained of' must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 561). Finally, "it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 U.S. at 561).

The Agency appears to argue primarily that Narragansett has failed to plead the latter two elements: causal connection and redressability.[6] The Agency does not seem to challenge that there is an alleged injury in fact, characterizing the injury as either "harm to particular land not transferred or preserved" or being deprived "of the benefits of the land transfers or other provisions included in the Programmatic Agreement." Fed. Opp'n & Mem. at 11. Regarding causal connection and redressability, the Agency argues that the alleged injuries are "fairly

---

[6] The Agency makes at least some other arguments, such as that this case should be dismissed under the political question doctrine. *See* Fed. Opp'n & Mem. at 13 n.4. It is not necessary to address these other arguments given the Court's holding on standing.

14

traced to the dispute between the Rhode Island DOT and Plaintiff," not traced to the Agency.  *Id.*
at 13.  In other words, the Agency argues that the State Defendants caused the alleged injuries by
insisting on the sovereign immunity waiver and failing to transfer the properties, and that the
injuries would therefore be redressable only through the State Defendants.  *See id.* at 14.  The
Agency cites case law for the proposition that it is difficult to show standing where "causation or
redressability hinges on the action of third parties."  *Id.* at 14–15; *see, e.g.*, *Nat'l Wrestling
Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) ("When a plaintiff's
asserted injury arises from the Government's regulation of a third party that is not before the
court, it becomes 'substantially more difficult' to establish standing."), *abrogation on other
grounds recognized by Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017); *Haitian
Refugee Ctr. v. Gracey*, 809 F.2d 794, 802 (D.C. Cir. 1987) ("[C]ausation is extremely unlikely
if the causal chain involves a prediction about the independent actions of third parties.").

     Narragansett barely addresses standing in its opposition.  First, Narragansett states that
standing is no longer at issue now that there is final agency action.  Fed. Reply & Opp'n at 2.
This seems to be referencing the Court's earlier opinion denying the Agency's motion to dismiss,
but that opinion only addressed whether Narragansett failed to state a claim, not standing.  *See
Narragansett*, 2020 WL 4201633.  Next, Narragansett states that it has "standing as the historic
tribe that suffered harm to its historic tribal properties," citing 5 U.S.C. § 702.  Fed. Reply &
Opp'n at 2 n.1.  But this does not explain how Narragansett meets the constitutional standing
requirements beyond identifying an injury in fact, which the Agency does not dispute.  Finally,
Narragansett addresses the Agency's main argument—that Narragansett lacks standing because
"injury traces to the State of RI."  *Id.* at 5.  But all Narragansett says on this point is that the
Agency is being inconsistent because, in the Agency's Answer to the Amended Complaint, the

Agency supposedly "admit[ed] there was no harm to" Narragansett "by either [the Agency] or the State of RI because the Section 106 process was completed by the new PA." *Id.*  It is not clear why this supposed inconsistency is relevant.  Parties are expected to accept allegations for purposes of motions to dismiss even while denying those allegations.  *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (cleaned up)).  Narragansett does not address the substance of the Agency's arguments about how there is no causation or redressability for the Agency due to the State Defendants' involvement, i.e., refusal to transfer land without waiver of sovereign immunity.

In its Amended Complaint under the heading for standing, Narragansett also references "the *Tribe's rights to be consulted* on undertakings pursuant to the NHPA, such that historical sites have been disturbed with no adequate remedy provided as per the PA and as required pursuant to the NHPA."  Am. Compl. ¶ 4 (emphasis added).  It is not clear whether Narragansett is asserting a constitutional injury-in-fact of failure to consult.  Narragansett did not provide explanation in its briefing and, importantly, failed to dispute the Agency's characterization of the alleged injuries as being harm to the land itself and deprivation of the land.[7]  *See* Fed. Opp'n &

---

[7] The Agency's third-party argument seems to focus on the termination of the first programmatic agreement rather than formation of the second.  *See, e.g.*, Fed. Opp'n & Mem. at 11 (arguing that Narragansett does not allege that the Agency's adoption of the new mitigation items caused harm).  But the third-party issue would remain even if focusing on the formation of the second programmatic agreement as long as the relevant injuries-in-fact are harms to the land or deprivation of the land because any remedy to those would still need to run through the State Defendants.  One exception to this might be a theory that harm to the land could be redressed by implementing other mitigation items different from both those in the original programmatic agreement or the second programmatic agreement.  Even if this theory were otherwise legally sound—which the Court will not opine on without hearing from both sides—Narragansett did not ask for this remedy in their complaint.  *See* Am. Compl. at 11–12 (requesting, among other

Mem. at 11. If Narragansett did intend to pursue this theory, it has not addressed whether such a failure to consult could itself suffice as a redressable injury-in-fact independent from any causation or redressability issues relating to third parties.[8]

Given the State Defendants' role in the relevant conduct and Narragansett's failure to squarely address the Agency's arguments, the Court cannot clearly discern how the alleged harm would be redressed by a determination that the Agency acted arbitrarily and capriciously as required to show constitutional standing. Such a connection might exist; for example, "courts occasionally find the elements of standing to be satisfied in cases challenging government action on the basis of third-party conduct." *Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 940. But it is far from clear based on the Amended Complaint and Narragansett's briefing whether this is such a case. Given the case law's guidance about the difficulty of showing standing when a third party is involved, the Court hesitates to speculate about how standing can be shown when Narragansett declined the opportunity to try and distinguish the Agency's cases or more fully explain how it has standing. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("It is not the obligation of this Court to research and construct the legal arguments available to

---

things, that Defendants be "[e]njoined . . . from taking any action to transfer or facilitate the transfer of the Mitigation Properties contrary to the PA" and damages for harm to "sites of cultural and religious significance," but not requesting alternative mitigation items).

[8] Even assuming that a failure to consult is an injury sufficient to confer standing, Narragansett does not elaborate in its briefs on how exactly the Agency failed to consult with Narragansett. In other words, Narragansett does not lay out what level of consultation is required by regulation and what level occurred. *See, e.g.*, Fed. Mem. at ii (arguing only that "the termination of the Programmatic Agreement (PA) by FHWA was arbitrary and capricious and in Violation of the APA and Federal Law," but not that the Agency failed to consult while creating the second programmatic agreement); *id.* at 18 (explaining only that the new mitigation items were decided "without agreement of the Tribe"); Fed. Reply & Opp'n at 3–4 (stating, without further support, that the Agency terminated the programmatic agreement without Narragansett's consent and over its objection and that the new programmatic agreement failed to include reasonable mitigation measures, but not otherwise mentioning consultation with Narragansett).

the parties.  To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (cleaned up)).

Adopting any of the hypothetical arguments or interpretations discussed by the Court in this opinion regarding standing would have required an uncomfortable level of speculation.  And in failing to directly address the Agency's arguments, the Court was deprived of seeing what, if any, responses the Agency would give.  Even *pro se* plaintiffs are required to explain how they have standing to avoid such judicial speculation.  *See Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009) ("While *pro se* complaints are held to a less stringent standard than other complaints, even a *pro se* plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction." (citations and internal quotations omitted)).  Narragansett's briefs laid out too few breadcrumbs about standing for the Court to follow them with confidence, which in turn left too many questions unanswered.  Accordingly, the Court must hold that Narragansett has not sufficiently demonstrated standing to survive the Agency's motion to dismiss.  Narragansett's Amended Complaint is dismissed without prejudice as to the Agency.  If Narragansett decides to try again, the Court strongly encourages Narragansett to address—separately and clearly—each of the Agency's arguments.

### C.  Motions to Correct or Supplement and Motion for Sanctions

Both of Narragansett's motions regarding the administrative record are denied as moot in light of the Court granting defendants' motions to dismiss.  *See Beyond Pesticides/Nat'l Coal. Against Misuse of Pesticides v. Whitman*, 360 F. Supp. 2d 69, 70–72 (D.D.C. 2004) (denying motion to compel production of administrative record as moot after granting partial motion to dismiss).  With those motions denied as moot, the Agency's delay in responding to the first motion to supplement is harmless.  The Agency's motion for extension of time to respond to the

first motion to compel is therefore granted.  *See* Fed. R. Civ. P. 6(b)(1) (permitting extension of

time "for good cause").  Narragansett's motion for sanctions is also denied; there is no violation

to form the basis of sanctions now that the Court has granted the Agency's motion for extension

of time.  To the extent Narragansett seeks to serve a further amended complaint to cure the

deficiencies explained in this opinion, the Court encourages the parties to resolve issues

regarding the completeness of the administrative record, either by agreement or motion, before

filing motions that depend on that.  Any motions by Narragansett to correct, amend, or

supplement the administrative record must clearly explain how the relevant legal tests are met to

justify such correction, amendment, or supplementation.

### V.  CONCLUSION

For the foregoing reasons, the parties' motions are decided as follows:

- The State Defendants' Motion to Dismiss (ECF No. 47) is **GRANTED**.  The
  Amended Complaint is dismissed **WITHOUT PREJUDICE** as to the State
  Defendants.

- The Agency's Motion to Dismiss and Cross-Motion for Summary Judgment (ECF
  No. 63) is **GRANTED** as to the motion to dismiss and otherwise **DENIED AS
  MOOT**.  The Amended Complaint is dismissed **WITHOUT PREJUDICE** as to
  the Agency.

- Narragansett's Motion for Summary Judgment (ECF No. 53) is **DENIED AS
  MOOT**.

- Narragansett's Motion to Compel Administrative Record (ECF No. 55) is
  **DENIED AS MOOT**.

- The Agency's Motion for Extension of Time (ECF No. 58) is **GRANTED**.

- Narragansett's Motion for Sanctions (ECF No. 59) is **DENIED**.

- Narragansett's Motion to Amend/Correct (ECF No. 70) is **DENIED AS MOOT**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 15, 2022                                      RUDOLPH CONTRERAS
                                                                          United States District Judge